IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF HAWAII

| | | |
|---|---|---|
| MELODEE H. and JON H., on behalf of their son Kelii H., | ) ) ) ) | CIVIL NO. 07-000256 HG-LEK |
| Plaintiffs, | ) ) ) | |
| vs. | ) ) | |
| DEPARTMENT OF EDUCATION, STATE OF HAWAII, | ) ) ) | |
| Defendant. | ) ) ) | |
| _____ | ) | |

**ORDER REVERSING HEARINGS OFFICER'S APRIL 23, 2004 DECISION AND ORDERING DEFENDANT TO REIMBURSE PLAINTIFFS FOR THE 2004-05 SCHOOL YEAR**

This is an Individuals with Disabilities in Education Act, 20 U.S.C. § 1400, et seq. ("IDEA") case involving a special education student, Kelii H., diagnosed as mentally retarded or "other health impaired". The issue before the Court is whether the Department of Education denied Kelii a free appropriate public education by failing to properly convene a individualized education program meeting to discuss the location offered by the DOE for Kelii's placement for the 2004-05 school year. On April 23, 2007, the Hearings Officer entered a "Findings of Fact, Conclusions of Law and Decision" finding that Plaintiffs had failed to prove by a preponderance of the evidence that the location offered by the DOE for the 2004-05 school year denied Kelii a Free Appropriate Public Education.

1

For the reasons set forth below, the Court REVERSES the Hearings Officer's April 23, 2007 Decision, ORDERS the Defendant to reimburse Plaintiffs for the 2004-05 school year, and finds Plaintiffs to be the prevailing parties in this action.

## BACKGROUND AND PROCEDURAL HISTORY

On August 18, 2005, the Court entered an "Order Reversing in Part and Affirming in Part the March 21, 2005 Decision of the Hearings Officer" in Civil Case No. 05-00279 (Doc. 19, "August 18, 2005 Order".)  The August 18, 2005 Order considered the Plaintiffs' timely appeal of a Hearings Officer's March 21, 2005 Decision.  The March 21, 2005 Decision addressed the preclusive effect of a Hearings Officer's September 3, 2004 Decision.

The August 18, 2005 Order sets forth the relevant background and procedural history through the date of the Court's Order. See also Melodee H., et al. v. DOE, 2006 WL 1381876 (D. Haw. May 17, 2006)(denying, without prejudice, Plaintiff's Motion Regarding Entitlement to Fees as prevailing party).

In the August 18, 2005 Order, the Court held:

> Plaintiffs are precluded from litigating the appropriateness of the services offered in the June 18, 2004 IEP [Individualized Education Plan] as they were found appropriate in the Young September 3, 2004 Decision and that decision was not appealed.  Plaintiffs are not precluded, and may proceed with an impartial administrative hearing, on the issue of whether the location the Department offered for Kelii's education for the 2004-2005 school year provided a FAPE [Free Appropriate Public Education].

2

(August 18, 2005 Order at 8.)

The Court order clarified the claim and issue preclusion matters raised by the Department of Education and ruled on by the Administrative Hearings Officer in the March 21, 2005 Decision. The August 18, 2005 Order also required examination of the follow up on the location of the program required by Hearings Officer Young's September 3, 2004 Decision.

The Court reversed in part and affirmed in part the "March 21, 2005 Decision of the Hearings Officer Granting Preclusive Effect to the September 3, 2004 Decision", and further ordered that:

> [1.] Plaintiffs may proceed with their request for an impartial hearing before the Office of Administrative Hearings, Department of Commerce and Consumer Affairs, State of Hawaii.
>
> [2.] The impartial hearing is limited to a single issue: did the location offered by the Department of Education for the 2004-2005 school year deny Kelii a FAPE?
>
> [3.] Plaintiffs are precluded from challenging the services offered in the June 18, 2004 IEP at the impartial hearing.

(August 18, 2005 Order at 11.)

On August 26, 2005, Plaintiffs' counsel informed the Office of Administrative Hearings that this Court had reversed in part and affirmed in part the Hearings Officer's March 21, 2005 Decision and requested that the matter be rescheduled for hearing.

On September 19, 2005 (in DOE-2004-160), Hearings Officer Haunani H. Alm acknowledged that this Court's August 18, 2005 Order allowed Plaintiffs to "proceed in an administrative hearing with regard to the issue of student's placement during the 2004-2005 school year", but dismissed the case for lack of subject matter jurisdiction on the grounds that the time period for deciding the case had expired pursuant to 34 C.F.R. § 300.511(a) and H.A.R. § 8-56-77(a).

Both 34 C.F.R. § 300.511(a) (Timeliness and convenience of hearings and reviews) and H.A.R. § 8-56-77(a) (Timeliness and convenience of hearings) require the Hearings Officer to issue a final decision within forty-five (45) days of a request for hearing.  Either party may request an extension of the 45-day period.

Hearings Officer Alm considered the fact that Plaintiffs made the initial due process hearing request on November 12, 2004 and the 45-day period required by 34 C.F.R. § 300.511(a) and H.A.R. § 8-56-77(a) had been extended from December 27, 2004 various times up to May 16, 2005.  Hearings Officer Alm noted that neither party had requested to extend the 45-day time period beyond May 16, 2005.

Plaintiffs had, however, timely appealed the March 21, 2005 Decision to this Court and the appeal was pending when the May 16, 2005 time period expired.

4

The Plaintiffs did not appeal the Hearings Officer's September 19, 2005 Decision.  Instead, on September 20, 2005, Plaintiffs filed another Request for Impartial Due Process Hearing on Kelii's behalf (DOE-SY0506-044).  That request again asked the Hearings Officer to address the issue on remand as set forth in this Court's August 18, 2005 Order.

This Court did not enter final judgment as to its August 18, 2005 Order in Civil Case No. 05-00279 until November 10, 2005.

On December 14, 2005, Hearings Officer Richard A. Young, Esq. entered an Order Granting Respondent Department of Education's Motion for Partial Summary Judgment.  The December 14, 2005 Decision, relying on the Hearings Officer's September 19, 2005 Decision, again dismissed the issue on remand as set forth in this Court's August 18, 2005 Order.  Hearings Officer Young held that Plaintiffs were "precluded from re-litigating the appropriateness of the educational program offered to Kelii for the 2004-2005 school year."

Mr. Young denied Plaintiffs' motion to reconsider the December 14, 2005 Decision on January 3, 2006.

On January 17, 2006, Plaintiffs appealed from the Hearings Officer's Decisions to set aside the September 19, 2005 Decision and the December 14, 2005 Decision.

On October 11, 2006, the Court entered an "Order Vacating Hearings Officer's September 19, 2005 Decision and Reversing

5

Hearings Officer's December 14, 2005 Decision and Remanding Case to Office of Administrative Hearings, Department of Commerce and Consumer Affairs, State of Hawaii for Compliance with Court's August 18, 2005 Order." (Doc. 16, "October 2006 Order".)

In its October 2006 Order the Court remanded the case back to the administrative level and again directed the Hearings Officer to comply with the Court's August 18, 2005 Order which was limited to a single issue:  "Did the location offered by the Department of Education for the 2004-2005 school year deny Kelii a FAPE?"

On October 24, 2006, the Court entered a final judgment.

On February 15, 2007 and March 12, 2007, Hearings Officer Alm convened a hearing pursuant to the Court's Order.

On April 23, 2007, the Hearings Officer issued a "Findings of Fact, Conclusions of Law, and Decision", DOE-2004-160A, ("April 2007 Decision".)

The April 2007 Decision finds that "the location offered by the DOE for the 2004-2005 school year, on October 13, 2004, did not deny [Kelii] a FAPE." (April 2007 Decision at 10.)  The Hearings Officer also denied Plaintiffs' request for reimbursement for Kelii's educational costs for the 2004-2005 school year and deemed the DOE to be the prevailing party.

On May 16, 2007, Plaintiffs filed the present action seeking reversal of the April 2007 Decision.  Plaintiffs further seek an

order that the location the DOE offered for Kelii's education for the 2004-2005 school year denied him a FAPE and granting Plaintiffs reimbursement for the cost of the home program for the summer and fall of 2004 and for placement at the Redemption Academy for the 2004-05 school year and all related costs.

On January 15, 2008, Plaintiffs filed their opening brief.

On February 15, 2008, Defendant filed its answering brief.

On February 28, 2008, Plaintiffs filed their reply.

On March 24, 2008, this matter came on for hearing.  On that same date, after hearing oral argument, the Court ruled on behalf of Plaintiffs and REVERSED the Hearings Officer's April 23, 2007 Decision.  The Court further ORDERED the Defendant to reimburse Plaintiffs for the 2004-05 school year and found Plaintiffs to be the prevailing parties.  This is the written order memorializing that decision.

### STANDARD OF REVIEW

The standard for reviewing administrative decisions in IDEA cases has been described as "modified de novo."  Bucks County Dep't. of Mental Health/Mental Retardation v. Pennsylvania, 379 F.3d 61, 65 (3rd Cir. 2004).  In evaluating an appeal of an administrative decision under IDEA, a district court "shall receive the records of the administrative proceedings...shall hear additional evidence at the request of a party; and...basing its decision on the preponderance of the evidence, shall grant

such relief as the court determines is appropriate." 20 U.S.C. § 1415(i)(2)(C).

The Supreme Court articulated its interpretation of the statute's standard of review in <u>Bd. of Educ. of Hendrick Hudson Cent. Sch. Dist., Westchester County v. Rowley</u>, 458 U.S. 176, 206, 102 S.Ct. 3034, 3035 (1982). "[T]he provision that a reviewing court base its decision on the 'preponderance of the evidence' is by no means an invitation to the courts to substitute their own notions of sound educational policy for those of the school authorities which they review." <u>Id.</u> The statute requires that "due weight" be given to the findings in the administrative proceedings. <u>Id.</u>

The Ninth Circuit Court of Appeals has held that the amount of deference given to an administrative hearings officer's findings depends on the thoroughness of the findings. <u>Capistrano Unified Sch. Dist. v. Wartenberg</u>, 59 F.3d 884, 891 (9th Cir. 1995). More deference is accorded when the hearings officer's findings are "thorough and careful." <u>Id.</u> The court has discretion to decide the amount of deference it gives to the administrative findings. <u>County of San Diego v. California Spec. Educ. Hearing Office</u>, 93 F.3d 1458, 1466 (9th Cir. 1996). The ultimate determination of the appropriateness of the educational program is reviewed <u>de novo</u>. <u>Capistrano Unified Sch. Dist.</u>, 59 F.3d at 891.

8

A court's inquiry in reviewing administrative decisions under IDEA is twofold.  "First, has the State complied with the procedures set forth in the Act?  And second, is the [IEP] developed through the Act's procedures reasonably calculated to enable the child to receive educational benefits?"  Rowley, 458 U.S. at 206-07 (footnotes omitted); Union Sch. Dist. v. Smith, 15 F.3d 1519, 1524 (9th Cir. 1994).

## BURDEN OF PROOF

Under the Individuals with Disabilities in Education Act ("IDEA"), the burden of proof in an administrative hearing challenging an Individualized Education Program (IEP) is placed upon the party seeking relief, whether that is the disabled child or the school district.  Schaffer ex rel. Schaffer v. Weast, 126 S.Ct. 528, 537 (2005) ("The burden of proof in an administrative hearing challenging an IEP is properly placed upon the party seeking relief.").  Here, Plaintiffs had the burden of proving that the proposed placement location offered by the DOE did not comply with the IDEA requirements.

The Plaintiff, as the party challenging the administrative decision, also bears the burden of proof in seeking review in the district court.  Clyde K. v. Puyallup School District, No 3, 35 F.3d 1396, 1398-99 (9th Cir. 1994), superseded by statute on other grounds, Individuals with Disabilities in Education Act, Pub.L. No. 105-17, 111 Stat. 37; Seattle School Dist., No. 1 v.

B.S., 82 F.3d 1493, 1498 (9th Cir. 1996)(School district
challenging administrative ruling concerning its proposed
placement of disabled child had burden of proving compliance with
Individuals with Disabilities Education Act (IDEA) in district
court.).

## IDEA

Congress enacted IDEA to financially assist state and local
agencies in educating students with disabilities.  See Ojai
Unified Sch. Dist. v. Jackson, 4 F.3d 1467, 1469 (9th Cir. 1993).
IDEA's goal is "to ensure that all children with disabilities
have available to them a free appropriate public education that
emphasizes special education and related services designed to
meet their unique needs and prepare them for further education,
employment, and independent living . . . "  20 U.S.C. §
1400(d)(1)(A).  IDEA defines the term "free appropriate public
education" ("FAPE") as "special education and related services
that . . . are provided in conformity with the individualized
education program required under section 1414(d) of this title."
20 U.S.C. § 1401(9).

The mechanism for ensuring FAPE is the development of a
detailed, individualized instruction plan known as an
"individualized education program."  IDEA defines the term
"individualized education program" ("IEP") as "a written
statement for each child with a disability that is developed,

reviewed, and revised in accordance with section 1414(d) of this title."  20 U.S.C. § 1401(14).  The "IEP team" that meets to discuss and formulate the disabled student's IEP consists of several individuals, including the student's parents, regular teacher, special education teacher, a representative of the local educational agency, and other individuals with relevant knowledge about the student's disability.  20 U.S.C. § 1414(d)(1)(B).

In addition to a substantive right to a free appropriate public education, IDEA and its regulations provide certain procedural safeguards to parents.  For example, parents may examine all relevant records regarding identification, evaluation, and educational placement of their children; must receive prior written notice if a school proposes or refuses to alter the child's identification, evaluation, or educational placement; may request an impartial due process hearing regarding the education of their disabled child; and may obtain judicial review of an administrative decision they do not agree with regarding the identification, evaluation, or educational placement of their child.  20 U.S.C. §§ 1415(b)(1), (b)(3), (b)(6), and (f); see 34 C.F.R. § 300.1 et seq.

Recipients of federal funds, such as the State of Hawaii, Department of Education must "establish and maintain procedures in accordance with [§ 1415] . . . to ensure that children with disabilities and their parents are guaranteed procedural

11

safeguards with respect to the provision of a [FAPE] by such agencies."  20 U.S.C. § 1415(a).  The DOE has implemented the IDEA by promulgating regulations for the "Provision of a Free Appropriate Public Education for Student with a Disability" contained in Title 8, Chapter 56 of the Hawaii Administrative Rules.  With regard to the provision of a FAPE, Haw. Admin. Rule § 8-56-3 provides:

> (a) The department shall ensure that each student with a disability who resides in the State, including a student with a disability who has been suspended for more than ten school days in a given school year or dismissed from school, is provided a free appropriate public education in accordance with this chapter.
>
> (b) The services provided to a student under this chapter shall address all of the student's identified special education and related services needs.
>
> (c) The services and placement needed by each student with a disability to receive a free appropriate public education shall be based on the student's unique needs and not on the disability.

Haw. Admin. Rules § 8-56-3.

## ANALYSIS

It is undisputed that Kelii qualifies for special education and related services under the IDEA under the categories of mental retardation and other health impairment. Kelii has been diagnosed with Velocardiofacial Syndrome, a rare genetic disorder.

***September 3, 2004 Hearings Officer Decision***

This case stems from the hearing decision of Hearings Officer Richard A. Young, <u>Student v. DOE</u>; DOE 2004-048 (Sept. 3, 2004), regarding the location of Kelii's placement for the 2004-05 school year.

The September 3, 2004 Decision held that Plaintiffs had not received an offer of FAPE because Kelii was not timely given a mental health evaluation and other assessments and the DOE had failed to consider an alternative placement other than the Home School.  (Record on Appeal ("RA") at Exh. 11 (Sept. 3, 2004 Decision) at 12.)  After ordering the DOE to reimburse Plaintiffs for the 2003-04 school year, the Hearings Officer gave the DOE the opportunity to give Kelii a FAPE consistent with the June 18, 2004 IEP.  (<u>Id.</u>)  As an alternative, the Hearings Officer gave Plaintiffs the opportunity to request an IEP meeting to discuss a proposed alternative location for Kelii's placement at which Kelii would feel safe:

> For the 2004-2005 school year, the DOE is given the opportunity to provide a FAPE, now that it has been established that student has [Velocardiofacial Syndrome] VCFS, and the IEP has been developed subsequent to the diagnosis.  Petitioners are entitled to the services offered in the June 18, 2004 Prior Written Notice, . . . .
>
> The Hearings Officer is aware of Petitioner's claim that Student does not feel safe at the Home School.[1] Therefore, as an alternative to the preceding paragraph, for the 2004-2005 school year, if Petitioner so desires, Respondent is ordered to

---

[1] Kelii's Home School was Kapolei Elementary School.

> conduct an IEP meeting with Petitioners to
> determine where the special education services
> Student shall receive pursuant to the June 18, 2004
> Prior Written Notice shall be given in the public
> education system so that Student feels he is in a
> safe environment.  This IEP meeting shall be held
> no later than forty-five (45) days after the date
> of this decision.

(Sept. 3, 2004 Decision at 12) (footnote added.)

In its August 18, 2005 Order, this Court interpreted Hearings Officer Young's September 2004 Decision as "express[ing] his belief that an appropriate location was possible in a public school."  The only issue was the adequacy of the proposed alternative physical location for the placement.

### *Meaning of "Placement" Versus "Location of Placement"*

There has been some confusion regarding use of the term "placement" versus use of the term "location".  Both state and federal regulations require placement in the Least Restrictive Environment ("LRE"), whenever possible, but, with some exceptions, leave it up to the discretion of the educational agency as to the particular site (location) where the educational services will be provided.  Location is one of the components of an educational placement.

At the March 24, 2008 hearing, the attorney for the DOE explained that Kelii's June 18, 2004 Individualized Education Program ("IEP") discussed his education program and his Least Restrictive Environment ("LRE").  The concept of LRE is defined in the IDEA: "To the maximum extent appropriate, children with

14

disabilities, including children in public or private institutions or other care facilities, are educated with children who are not disabled, and special classes, separate schooling, or other removal of children with disabilities from the regular educational environment occurs only when the nature or severity of the disability of a child is such that education in regular classes with the use of supplementary aids and services cannot be achieved satisfactorily."  20 U.S.C. § 1412(5); Haw. Admin. Rules § 8-56-45.  The LRE can be a placement, in terms of the type of setting in which the educational services will be provided (*e.g.*, public school, residential facility), but it is not the physical location (*i.e.*, which school, facility, etc.) where the educational program will itself be implemented.  See <u>D.B. v. Ocean Tp. Bd. of Educ.</u>, 985 F.Supp. 457, 490 (D.N.J. 1997) ("[T]here must be available, at one end of the continuum, completely segregated placements within separate schools, and, at the other end, placements within regular classes in public schools.") (quoting <u>Oberti v. Board of Educ.</u>, 801 F.Supp. 1392, 1400 (D.N.J. 1992)).

In the State of Hawaii, Box 23 on the IEP form describes a student's LRE.  Box 23 of Kelii's June 18, 2004 IEP provided: "As deemed appropriate by the special education or general education teacher, Kelii will participate with his general education class for PE, Music, Hawaiian Studies, Assemblies, Field trips and

15

other school related activities except Language arts, Math, and
related services."   In his September 2004 Decision, Hearings
Officer Young accepted that, under the IEP, Kelii's LRE was in a
public school setting, but concluded that the DOE needed to
revisit the *location* of his placement in light of the parents'
concern that Kelii did not feel safe at Kapolei Elementary
School.

     There is considerable case law discussing the meaning of
"educational placement" and when a change in the location of
where the educational services are to be provided constitutes a
"change in placement" to which procedural protections apply.
Generally, "educational placement" refers to the education
program in which the disabled child is placed and not to all
various adjustments in that program.   See In Re Educational
Assignment of Joseph R., 2007 WL 1314623 (W.D. Pa. May 4,
2007)(the term "educational placement" refers "only to the
general educational program in which the handicapped child is
placed and not to all the various adjustments in that program
that the educational agency, in the traditional exercise of its
discretion, may determine to be necessary.") (quoting Concerned
Parents & Citizens for the Continuing Ed. at Malcolm X (PS 79) v.
New York City Bd. of Ed., 629 F.2d 751, 756 (2nd Cir. 1980)).
Some states specifically define educational placement, but Hawaii
does not.   See Termine v. William S. Hart Union High School

District, 219 F.Supp.2d 1049, 1058 (C.D. Cal. 2002) (under California Admin. Code tit. 5, 3042(a), "specific educational placement means that unique combination of facilities, personnel, location or equipment necessary to provide exceptional services to an individual with exceptional needs").

Under certain circumstances, a transfer from one school to another may be considered a change in placement. See Tilton by Richards v. Jefferson County Bd. of Educ., 705 F.2d 800, 804 (6th Cir. 1983) (transfer to programs at alternative schools was change in placement where programs at new school were not comparable to original school). This is particularly true, where, as here, there is evidence that placing the student at a particular institution could be emotionally, educationally, and psychologically detrimental. See Brimmer v. Traverse City Area Public Schools, 872 F.Supp. 447, 452 (W.D. Mich. 1994) ("Ultimately, the question whether a proposed change constitutes a change in placement, triggering procedural protections, is necessarily fact-specific. . . The focus must be on the importance of the particular modification and whether it is likely to affect in some significant way the child's learning experience.") (citations and quotations omitted).

Also significant in this case is the fact that Hearings Officer Young specifically provided for an IEP meeting, to which procedural protections apply, to discuss alternative locations

for Kelii's placement.  As such, there is no doubt that Hearings
Officer Young had determined that the location of Kelii's
placement was likely to affect his learning experience in some
significant way such that the procedural protections for a change
in placement would apply.  See De Leon v. Susquehana Community
School Dist., 747 F.2d 149, 153 (3d Cir. 1984).

### October 13, 2004 IEP Meeting

Plaintiffs elected to accept the alternative offered by the
Hearings Officer in the September 3, 2004 Decision, and an IEP
Meeting was held on October 13, 2004.  The purpose of the October
2004 IEP meeting was to determine the location at which the
services offered in the June 18, 2004 IEP would be implemented.

Attending the October 2004 IEP Meeting were: Kelii's
parents, Eileen Muraoka (facilitator), Heather Wilhelm (Mauka
Lani Elementary School "MLES" Principal), Catherine Schoder (MLES
Regular Education Teacher), Scott Grilho (MLES Special Education
Teacher), Christie Sasaki (MLES SSC), Teri Horiuchi (Vice
Principal), Kathleen Paulo-Hirai (Care Coordinator), Sheila
Kaimuloa (Private Parent Consultant), Stephen Dantzig, Psy. D.
(Leeward District), and Lydia Wood (resource teacher/recorder).

The DOE offered Mauka Lani Elementary School as an
alternative physical location for the placement.  Special
Education Department Chair Scott Grilho testified that each
component of the June 18, 2004 IEP and Prior Written Notice of

Department Action could be implemented at Mauka Lani Elementary.
(RA at Transcript Vol. II at 95-98.)  At the meeting, Mauka Lani
offered a transition IEP meeting to, among other things, plan for
Kelii's gradual transition back to a school setting.

Plaintiff parents and the parents' consultant expressed
concern about the location of Kelii's placement being on the
public school campus at Mauka Lani Elementary School because of
its large enrollment and the recommendations noted in the
psychological reports.  At the conclusion of the meeting, the
Plaintiffs rejected the proposed location of Mauka Lani
Elementary.

### Subsequent Administrative Proceedings

On November 12, 2004, Plaintiffs filed a request for
impartial hearing regarding the 2004-05 school year, and were
eventually allowed to proceed with an administrative hearing on
the issue of whether the location offered by the DOE for the
2004-05 school year denied Kelii a FAPE.  The subsequent
administrative proceedings, including the Court's most recent
remand order, dated October 11, 2006, are detailed above.

### April 23, 2007 Hearings Officer Decision

On remand, the issue before the Hearings Officer, as
directed by this Court, was whether the location offered by the
DOE for the 2004-2005 school year, on October 13, 2004, denied

Kelii a Free Appropriate Public Education ("FAPE").  The Hearings
Officer concluded:

> The preponderance of the evidence showed that the
> DOE Proposed School [Mauka Lani Elementary] could
> implement Student's IEP . . . [and that] . . .
> Petitioners did not prove by a preponderance of the
> evidence that the location offered by the DOE for
> the 2004-05 school year on October 13, 2004 denied
> Student a FAPE.

(Compl. at Exh. A (April 23, 2007 Decision) at 9-10.)

### *Plaintiffs' Argument*

Plaintiffs contend that the DOE violated the IDEA, and the
federal and state regulations thereunder, by: (1) committing
material procedural violations; (2) offering Kelii a pre-
determined placement not based on his unique educational needs;
(3) not having a placement decision made by a group of persons
knowledgeable about Kelii; (4) failing to adequately consider
potentially harmful effects on Kelii or the quality of services
that he needs in selecting the educational placement, including
the testimony of psychologist Dr. Margaret Koran, Plaintiffs'
expert; and (5) otherwise failing to provide the parents a
meaningful opportunity to participate.

### *The DOE Denied Kelii a FAPE for the 2004-05 School Year*

The Court finds that the DOE denied Kelii a FAPE for the
2004-05 school year.  The Hearings Officer Alm's findings are not
entitled to deference because they are not thorough and careful.
In her April 23, 2007 Decision, Hearings Officer Alm incorrectly

20

found that "[t]he placement *and* the location of the placement in

the June 18, 2004 IEP were already deemed to be an offer of a

FAPE by Hearings Officer Young."  (April 23, 2007 Decision at 9)

(emphasis original).[2]  To the contrary, Hearings Officer Young

gave the DOE the opportunity to provide a FAPE, or,

alternatively, based on Plaintiffs' election, ordered the DOE to

conduct an IEP meeting "to determine <u>where</u> the special education

services [Kelii] shall receive . . . shall be given . . . "

(Sept. 3, 2004 Decision at 12)[3] (emphasis added).

        The Hearings Officer also erred by discounting the fact

that: no one present at the meeting knew Kelii, except the

parents; there was no discussion of where Kelii was going to

school, and parents were not given any information on Mauka Lani

Elementary, the proposed alternative physical location for

Kelii's placement offered by DOE.  The Hearings Officer also

erred by discounting Dr. Koven's uncontroverted testimony

regarding an appropriate setting in which to provide educational

services for Kelii.  (April 23, 2007 Decision at 8-9.)

        "[P]rocedural inadequacies that result in the loss of

educational opportunity," <u>W.G. v. Board of Trustees of Target</u>

<u>Range School Dist.</u>, 960 F.2d 1479, 1485 (9th Cir. 1992), or

---

        [2] At the March 24, 2008 hearing, the attorney for the DOE
conceded that the Hearing Officer's understanding of the meaning
of "placement" versus "location" was not accurate.

        [3]

seriously infringe the parents' opportunity to participate in the IEP formulation process, or that "caused a deprivation of educational benefits", Roland M. v. Concord Sch. Comm., 910 F.2d 983, 994 (1st Cir. 1990), clearly result in a denial of FAPE.

The October 2004 IEP meeting was plagued by several material procedural violations.  Under federal regulations, a child's placement must be based on the child's IEP and the child's parents must have the opportunity "to participate in meetings with respect to the identification, evaluation, and educational placement of the child."  20 U.S.C. § 1415(b)(1); 34 C.F.R. § 300.501(c)(1); 34 C.F.R. § 300.322.  Placement decisions must be made by a group of persons knowledgeable about the child, including the parents and at least one regular and one special education teacher of the child, and knowledgeable about the DOE's resources.  34 C.F.R. § 300.321 ("IEP Team").

From Hearings Officer Alm's April 23, 2007 Decision and the other record evidence, it is apparent that the DOE had pre-determined the physical location of Kelii's placement. The parents were the only team members who knew Kelii.  There was no team discussion about the physical location for Kelii's placement and no discussion about potential harmful effects.  See generally M.L. v. Federal Way School Dist., 394 F.3d 634 (9th Cir. 2005).  There was not even a discussion as to the size of Mauka Lani at the October 2004 meeting.  (RA at Hearing Transcript, dated Feb.

22

15, 2007, at p. 111.)  Nor was there a consideration of alternatives. The DOE could have, but did not, review transcripts of the due process hearing held in July 2004.  Testimony from the July 2004 hearing would have provided the DOE with some guidance in determining the appropriate location for Kelii's placement.

Pre-determination of a child's placement is a violation of IDEA because it deprives the parents of meaningful participation in the IEP process.  See Target Range School Dist., 960 F.2d at 1484; Spielberg v. Henrico County Public Schools, 853 F.2d 256 (4th Cir. 1988) (a school system violates the very purpose of the IEP requirement of meaningful participation if it pre-determines placement); Deal v. Hamilton County Bd. of Educ., 392 F.3d 840 (6th Cir. 2004) ("Because it effectively deprived [student's] parents of meaningful participation in the IEP process, the predetermination caused substantive harm and therefore deprived [student] of FAPE").

The Hearings Officer also improperly disregarded the recommendations of Dr. Koven and treated them as irrelevant. The DOE must take steps to assure that in determining "educational placement", the "potential harmful effect" on the child or on the quality of services he needs are considered.  See Haw. Admin. Rules § 8-56-45.  Dr. Koven should have been, but was not, invited to the October 2004 IEP meeting.  (RA at Hearing Transcript, dated Feb. 15, 2007, at p. 32.)  Including Dr. Koven

23

at the IEP meeting would have given the IEP team psychological information crucial to determining the appropriate physical location of Kelii's placement. At the February 15, 2007 hearing[4], Dr. Koven testified as to several reasons why she believed it was not appropriate for Kelii to attend Mauka Lani. Id. at 36-38.) She testified that socially and emotionally Kelii would not be able to tolerate being in settings with large groups of children and that Kelii's Velocardiofacial Syndrome carries with it complicated heart problems making it physically unsafe for him. (Id.)  Dr. Koven concluded that placement at Mauka Lani would be emotionally, educationally, and physically harmful to Kelii. (Id. at 38.) The DOE chose not to cross-examine Dr. Koven.  The only witness to testify on behalf of the DOE, Scott Grilho, admitted that he did not know Kelii, had never taught him, had never met him, and had never assessed him.  (Id. at 101-02.)

Such testimony goes directly to the issue – the appropriate location for Kelii's placement – which this Court ordered to be decided on remand.  The Hearings Officer clearly erred in disregarding this testimony which goes to the central issue of the potential harmful effect on Kelii as a result of the location of his educational placement.

---

[4] The February 15, 2007 hearing is one of the hearings held in accordance with the Court's October 11, 2006 Order and upon which the Hearings Officer's April 23, 2007 Decision is based. The February 15, 2007 hearing reconvened on March 12, 2007.

For these reasons, the Court reverses the Hearings Officer's April 23, 2007 decision and finds that the Plaintiff parents have an equitable right to reimbursement for the cost of providing Kelii an appropriate education for the 2004-05 school year.  See <u>W.G. v. Bd. of Trustees</u>, 960 F.2d 1479, 1485 (9th Cir. 1992).

<u>**CONCLUSION**</u>

For the foregoing reasons,

(1)   The Hearings Officer's April 23, 2007 Decision is **REVERSED**;

(2)   the Department of Education is **ORDERED** to reimburse Plaintiffs for the 2004-05 school year;

(3)   Plaintiffs are the prevailing parties; and

(4)   the Clerk of Court is **DIRECTED** to enter judgment in favor of Plaintiffs.

IT IS SO ORDERED.

DATED: May 13, 2008, Honolulu, Hawaii.



              /s/ Helen Gillmor
              Chief United States District Judge

---

<u>Melodee H. et al. v. Department of Education, State of Hawaii</u>; Civil No. 07-00256 HG-LEK; **ORDER REVERSING HEARINGS OFFICER'S APRIL 23, 2004 DECISION AND ORDERING DEFENDANT TO REIMBURSE PLAINTIFFS FOR THE 2004-05 SCHOOL YEAR**